

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SHARRON M. WALLACE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:04-CV-0212 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

# REPORT AND RECOMMENDATION
# TO AFFIRM DECISION OF THE COMMISSIONER

Plaintiff SHARRON M. WALLACE brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI). Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
THE RECORD[1]

Plaintiff filed applications for DIB and SSI on January 22, 2002. (Tr. 68-70; 296-97). In a

---

[1] Plaintiff initially applied for DIB and SSI on May 10, 2001 alleging she "became unable to work because of [a] disabling condition on February 27, 2001." (Tr. 65-67; 279-81). In a Disability Report filed May 8, 2001, plaintiff alleged her ability to work is limited by a herniated disc in her neck which limits her lifting to "no more than 72 lbs." and prohibits lifting above her neck. (Tr. 87; 100). Plaintiff averred she did not work at any time after the date her condition first bothered her. (Tr. 87, 106). The Social Security Administration denied benefits initially and upon reconsideration. (Tr. 21-22; 25-31; 34-38; 282-94).

Disability Report filed January 16, 2002, plaintiff alleged her ability to work is limited by a "moderate degeneration of the C4-5 and C5-6 discs" which limits her lifting to "no more than 10 lbs." (Tr. 109; 122). In a Disability Report filed January 16, 2002, plaintiff averred she did not work at any time after the date her condition first bothered her. (Tr. 109). In a Reconsideration Disability Report filed April 2, 2002, however, plaintiff advised she had worked since she filed her claim. (Tr. 128).

Plaintiff noted she completed high school in 1981, participating in special education classes, and identified past work as a housekeeper (1992-1994), nursing assistant (1994-2001), and delicatessen food preparer/cashier (2001-2002). (Tr. 78-85; 93).

The Social Security Administration denied benefits initially and upon reconsideration. (Tr. 23-24; 39-45; 48-51; 298-305; 307-10). An administrative hearing was held before an Administrative Law Judge (ALJ) on November 18, 2002. (Tr. 311-48). On February 13, 2003, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not under a "disability" as defined by the Social Security Act at any time through the date of his decision. (Tr. 14-19). The ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date, classifying her post-onset work activity as unsuccessful work attempts. (Tr. 15). The ALJ determined plaintiff has a severe medical impairment or combination of medical impairments, *viz.*, C4-5 and C5-6 disc herniations.[2] (Tr. 16). The ALJ determined, however, that plaintiff's impairments did not meet or equal any listed impairment.[3] After summarizing plaintiff's medical

---

[2] The ALJ found plaintiff's reflux esophagitis and any depression were not severe impairments. (Tr. 16).

[3] The ALJ noted plaintiff's condition had not induced an inability to ambulate effectively as defined in Section 1.00B2b, nor had she exhibited muscle weakness, motor, sensory, or reflex loss, or developed spinal arachnoiditis, or experienced pseudoclaudication as described in section 1.04A-C. (Tr. 16).

records and testimony at the hearing, the ALJ found plaintiff's "progress notes do not characterize her as having the profound limitations she asserted at the hearing" and, therefore, the ALJ did not "credit the extent of the problems [plaintiff] alleges, particularly in regard to the use of her hands and extremities." (Tr. 17). The ALJ further found there was no "documentation to support that [plaintiff] reported adverse medicinal side effects to her treating source." The ALJ accepted, however, as reasonable, plaintiff's "self-imposed" ten pound lifting limitation. The ALJ found plaintiff retained the residual functional capacity (RFC) – the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks – to perform a limited range of light and sedentary work, limited by the prohibition of lifting over ten (10) pounds and performing overhead reaching. Based upon this RFC and the fact that plaintiff's "previous occupations all had exertional requirements in excess of her current capacity," the ALJ found plaintiff unable to perform her past relevant work. The ALJ determined, however, based on vocational expert testimony, there was other work existing in significant numbers in the regional and national economies which plaintiff can perform with her RFC, age, education, and past relevant work experience, *viz.*, information clerk, order clerk, and customer order clerk. (Tr. 18). Upon the Appeals Council's denial of plaintiff's request for review on June 15, 2004, the ALJ's determination that plaintiff is not under a disability became the final decision of the Commissioner. (Tr. 6-7). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to

determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

III.
ISSUES

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform

other work that exists in significant numbers in the national economy, and whether the proper legal standards were applied in reaching this decision. To this extent, plaintiff presents the following grounds:

1. There is no substantial evidence to show plaintiff has the RFC to work for a full 8-hour workday;

2. The ALJ's finding that plaintiff is not disabled is not supported by substantial evidence because the ALJ presented the VE with a defective hypothetical which did not include all of plaintiff's established impairments; and

3. The ALJ's finding that plaintiff is not disabled is not supported by substantial evidence because the ALJ did not properly evaluate plaintiff's pain.

IV.
MERITS

It is noted the parties disagree as to the Commissioner's burden at Step 5 of the sequential analysis. This Court has previously addressed this issue in other cases. If the ALJ finds a claimant is not capable of doing past relevant work at the fourth step, as he did in this case, he must then determine whether the claimant's severe impairment prevents him from performing any other work. At this final step, the burden of proof is on the ALJ to identify other jobs the claimant can perform. The residual functional capacity, the age, education, and past work experience of the claimant, however, are to be considered in making this determination. 20 C.F.R. § 404.1520(f), .1545-.1568. Plaintiff has cited *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980) for the proposition that the ALJ has the burden to not only name jobs which exist in significant numbers in the economy, but also to show the claimant possesses sufficient RFC to perform the suggested jobs.

In the *Johnson* case, the court reversed and remanded the district court's decision to grant the Commissioner summary judgment. Specifically the court held, "The vocational expert never

gave testimony concerning the availability of jobs for a person with Johnson's educational level and work experience and with the physical limitations the ALJ found Johnson to have." *Id*. at 998. In essence the hypothetical was flawed for it, "assumed claimant had no physical limitations, although there was clear evidence that some such limitations existed." *Id*. citing *Stubbs v. Mathews*, 554 F.2d 1251 (5th Cir. 1977). The *Johnson* case cited by plaintiff has set forth the burden shifting between a claimant and the Commissioner as follows:

> Not only must the claimant show that he has a medically determinable physical or mental impairment which has lasted or is suspected to continue for twelve months, he also must prove that he cannot find "substantial gainful work which exists in the national economy, regardless of whether * * * he would be hired if he applied for (such) work." 42 U.S.C. s 423(d)(2)(A).
>
> ....
>
> A claimant for social security disability benefits has the burden of proving his disability under the Act. He must show that he suffers from a mental or physical impairment that not only renders him unable to perform his previous work but, given his age, education, and work experience, prevents him from engaging in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. [internal citations and quotations omitted]. However, the claimant need not prove all of this initially. Once he shows that he is disabled to the point that he can no longer perform his former job, the burden then shifts to the Secretary to show there is other gainful employment in the economy which the claimant *can perform*.

*Johnson*, 612 F.2d at 997 (emphasis added). It appears plaintiff's chief argument is that the ALJ has the burden of showing, at Step Five, that plaintiff has the RFC to perform the jobs cited by a VE rather than naming jobs he believes plaintiff can perform. Plaintiff contends the ALJ did not meet this burden.

The RFC determination, however, is made at Step 4 of the sequential analysis in order to determine whether a claimant is capable of performing his or her past relevant work. The burden at

this point is still on the claimant. Once the step four determination is made in favor of the claimant, *i.e.* that he or she cannot perform their past relevant work, the burden shifts to the Commissioner to show there exists a significant number of other jobs in the economy <u>consistent with the RFC determination previously reached</u>. The jobs cited by the ALJ were consistent with the RFC determination previously reached by the ALJ at Step Four. At this stage, the burden shifted back to plaintiff to show she could not perform this work, *i.e.*, that she does not have the RFC to perform the jobs identified by the ALJ. The ALJ did not have any additional burden at this point in the proceeding.

A.
Residual Functional Capacity
to Perform Substantial Gainful Activity

Plaintiff argues there is no substantial evidence to show plaintiff retained the RFC to perform substantial gainful activity for a full eight hour work day. Review of the administrative record, however, reflects the ALJ's determination regarding plaintiff's RFC for light or sedentary work, limited by a ten pound weight restriction and no overhead reaching, is supported by substantial evidence.

On February 27, 2001, plaintiff presented to the hospital emergency center with a chief complaint of "chest pain." (Tr. 142; 147; 259-60). Plaintiff presented with a history of chest pain, but described a "tightness with discomfort in the right neck radiating down to the right arm with nausea and light headedness." She also reported bumping into an object resulting in her twisting her neck and of tightness in trapezius area as well. Plaintiff's paraspinous cervical musculature and trapezius were found to be hypertonic. Cervical spine films showed mid anterior cervical spurring with attenuation of the cervical lordosis. Plaintiff was diagnosed with cervical strain.

Due to her chief complaints of left-sided chest pain, a cardiology consult opined plaintiff's symptoms of episodic epigastric discomfort, atypical chest pain and post-prandial diarrhea appeared to be from acid peptic disease. (Tr. 146). A "3- view" x-ray of plaintiff's cervical spine was taken which revealed "straightening of normal lordotic curvature of the cervical spine which could be related to muscle spasm with anterior and posterior spondylosis off the inferior end plates of C3, C4, and C5, but with no radiographic evidence of acute bony abnormalities."[4] (Tr. 148; 171; 258). Upon plaintiff's discharge on March 2, 2001, diagnoses were listed as reflux esophagitis, gastritis, gastric polyp, and a small hiatal hernia. (Tr. 148).

On March 15, 2001, plaintiff presented to Dr. Neil Veggeberg, a rehabilitation physician, advising an x-ray at the hospital had revealed a pinched nerve and that her employer was "concern[ed] about it and want[ed] details about [it] before [she] returned to work." (Tr. 245; 256). Examination on that same date revealed no acute distress, protraction in the neck and shoulders, pain on extension and rotation of her neck to the right, but no major neurological deficits in her upper extremities. (Tr. 244; 257).

On March 18, 2001, an MRI of plaintiff's cervical spine revealed "moderate degeneration of the C4-5 and C5-6 discs." Both discs showed "prominent focal protrusion of higher signal intensity disc material in the left paramedian region and slight impingement on the spinal cord at both levels" which were "consistent with herniations of moderate size." There was "somewhat greater overall narrowing of the spinal canal at C5-6 where the posterior subarachnoid space [was] almost completely obliterated." (Tr. 247; 253). On March 29, 2001, plaintiff reported to Dr. Veggeberg that she had been undergoing physical therapy and that it had been "helping a little bit." (Tr. 243;

---

[4]The discharge summary also recited plaintiff's "chief complaint" to be "neck pain with radiation to her right arm associated with weakness." (Tr. 148).

271). Plaintiff's neck showed a slight protraction, and there was still resistance upon extension and rotation to the right side. However, no major neurological deficits were present. Dr. Veggeberg opined plaintiff was "doing reasonably well" and recommended continuation of her exercises.

On April 19, 2001, plaintiff's neck still showed a protracted position and there was still a slight resistance upon extension and rotation to either side. (Tr. 242; 270). Plaintiff's upper extremities, however, showed good strength and range of motion and there were no major neurological deficits. Dr. Veggeberg noted plaintiff's employer did not feel it was safe for plaintiff to return to work with any type of injury that was limiting her. Dr. Veggeberg opined plaintiff could work "with no overhead work and no lifting greater than 20 pounds."

On June 11, 2001, plaintiff reported she had been unable to return to work because of her lifting limitations, and indicated pain in her neck and tingling sensation in her left arm. (Tr. 241; 269). Upon examination, Dr. Veggeberg opined plaintiff's "overall prognosis [was] good," although there was pain on extension and rotation to the left side. The doctor continued plaintiff's lifting limit of 20 pounds "based on her MRI scan of 3-18-01" and started plaintiff on Vioxx. On June 22, 2001, plaintiff reported the Vioxx was helping, that she had an appointment with the Texas Rehabilitation Commission (TRC), and that she had "applied for social security but did not qualify due to physical findings." (Tr. 240; 268). Plaintiff indicated she experienced "mild pain" as she extends and rotates to either side, but no major neurological deficits were found. Dr. Veggeberg opined plaintiff was "doing reasonably well," continued plaintiff's neck exercises, and also continued her on Vioxx.

On August 20, 2001, plaintiff reported sharp pains in her neck and shoulder, that she had stopped the Vioxx because of stomach problems, and that she was not working. (Tr. 239; 267). Dr.

Veggeberg again continued plaintiff's neck exercises and opined her "overall prognosis [was] good."

On September 20, 2001, plaintiff reported pain in the right side of her neck and shoulder, and that she had met with TRC but they were "concerned about providing her with training due to the fact she has acute problems going on." (Tr. 238; 266). After injecting plaintiff's neck with a steroid, Dr. Veggeberg continued plaintiff on a "fairly aggressive exercise program" for her neck and right shoulder.

On October 17, 2001, plaintiff advised Dr. Veggeberg she had been working on the exercises for her neck and shoulders since her last visit, but that she was "having worse pain." Plaintiff opined it was unlikely she would be able to lift more than 10 lbs. on a regular basis, and reported a TRC counselor was concerned that such a "10 lb. limit may be a little restricting." (Tr. 237; 265). Upon exam, Dr. Veggeberg found plaintiff's neck and shoulders were protracted and she exhibited resistance on extension and rotation. He further noted no major neurological deficits were present and that axial loading did not increase plaintiff's pain. Dr. Veggeberg opined plaintiff still had cervical disc disease at 2 levels, which was protracting her neck and shoulders, and recommended plaintiff continue to work on her exercises to retract her neck, shoulders and lower back.

On November 28, 2001, plaintiff reported "quite a bit" of pain in her neck, shoulder and lower back, as well as numbness on her left side, but advised she had been trying to work on the prescribed exercises. (Tr. 236; 264; 272). Plaintiff reported she had tried to find alternative employment as her previous employer would not take her back with her restrictions. She further advised TRC felt that with a 10-pound weight limit, it was unlikely they could find any type of work for her or could train her for any position which could accommodate the weight restriction.

Upon examination, Dr. Veggeberg found plaintiff's neck showed a forward flexed position, a marked increase of muscle tone on the left side of her neck, and a slight increase of symptoms as plaintiff extended and rotated to either side. He further found plaintiff's upper extremities showed good strength and range of motion, and that there were no major neurological deficits. Dr. Veggeberg instructed plaintiff to continue working on the exercises for her neck, shoulders and lower back, and opined that, overall, her prognosis was fair. However, "[b]ased on the TRC counselor assessment, she is presently totally and permanently disabled from gainful employment."

Three (3) months later, on February 26, 2002, Dr. Veggeberg found plaintiff's neck and shoulders to be protracted, and pain on extension and rotation of plaintiff's neck to either side. (Tr. 235; 263; 273). The doctor again found, however, that plaintiff's upper extremities showed good strength and range of motion, and that there were no major neurological deficits found. Plaintiff advised she had been having good results with the chiropractor, so Dr. Veggeberg recommended she continue with chiropractic treatment. The doctor commented, however, that plaintiff "continues to be totally and permanently disabled from gainful employment for all jobs she knows by experience or can be trained for."

On July 2, 2002, plaintiff advised she was having increasing pain in her neck and difficulty walking. (Tr. 234; 262; 274). Examination results were the same as on previous visits, with no major neurological deficits. Dr. Veggeberg again instructed plaintiff to work on her exercises. The doctor further advised plaintiff that, although a good surgical candidate, surgery would not give her a dramatic improvement as she was currently "moving reasonably well." Based on plaintiff's report that she was having "an increasingly difficult time moving her hands," Dr. Veggeberg opined that "she is totally and permanently disabled from gainful employment." Plaintiff was prescribed Darvocet.

On September 17, 2002, plaintiff reported having sharp pain from her neck into her left arm, and pain down her thoracic spine into her lumbar spine. (Tr. 275). Upon exam, Dr. Veggeberg found similar results with no major neurological deficits. The doctor ordered a repeat MRI and noted that, if indicated by the MRI results, he would contact a surgeon on plaintiff's behalf for her moderate size disc injury at C5-6.

On September 22, 2002, an MRI revealed no significant bulge, herniation or stenosis at C3-4. The testing also showed left sided disc protrusion which contacts and slightly flattens the ventral cord to the left of midline without definite cord impingement at C4-5. It also showed disc protrusion to the left of midline with contact deformity and flattening of the left ventral cord, with a possibility of mild cord impingement but no definite signal abnormality within the cord, at C5-6. (Tr. 276-77).

On October 9, 2002, plaintiff reported she was "still having quite a bit of pain, especially when she raises her arms up to read." (Tr. 278). Dr. Veggeberg, after noting the "fairly substantial disc rupture at C5-6 on the MRI, again found plaintiff's neck and shoulder were protracted, that she had pain as she extends and rotates to the left side, and that she did not have any major neurological deficits. The doctor instructed plaintiff to continue working on the exercises and recommended an appointment with a surgeon to discuss surgical options.

From February 2002 through March 2002, plaintiff received chiropractic treatment for neck pain she described as ranging from severe to moderate to mild. (Tr. 198-208). Muscle spasms and muscle hypertonicity were rated as moderate or minimal, while tenderness in the neck, and numbness and pins and needles sensations in arms were rated as mild. Reports indicated plaintiff's condition was improving with treatment as anticipated. On March 25, 2002, however, plaintiff's last day of treatment, a lateral cervical x-ray was taken and the notation of "no improvement;

discontinue care" was entered. (Tr. 196).

RFC assessments completed on March 27, 2002 (Tr. 209-16) and May 12, 2002 (Tr. 225-32) indicated plaintiff could stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. The March assessment found plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds, but that pushing and/or pulling activities were limited in the upper extremities by reaching which caused occasional left neck stiffness. The May assessment found plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and could perform unlimited pushing and/or pulling activities.[5] Both assessments found no postural, visual, communicative, or environmental limitations. Both assessments found plaintiff's manipulative abilities were limited by overhead reaching. The assessments further found plaintiff's alleged limitations attributed to her physical diagnosis were not fully supported by the medical evidence of record.

Based on the record summarized above, the ALJ's RFC finding is supported by substantial evidence. First, plaintiff's treating physician restricted plaintiff's lifting to *twenty* pounds, rather than the *ten* pounds imposed by the ALJ, and restricted plaintiff from performing overhead work. (Tr. 242; 243). Such an opinion is an opinion as to the nature and severity of plaintiff's impairments. The ALJ was entitled to give great weight to plaintiff's physician's assessment of her RFC, if not controlling weight. *See* 20 C.F.R. § 404.1527(d)(2). With these restrictions, plaintiff's physician, from March 2001 through October 2001, continued to report plaintiff's prognosis was good and that she was doing reasonably well, and continued to instruct her to follow a fairly

---

[5]Previous RFC assessments were completed on June 14, 2001 (Tr. 180-87) and October 12, 2001 (Tr. 188-95).

aggressive exercise program. (Tr. 237-43).[6] The treating physician also stated his opinion as to plaintiff's ability to work, *viz.*, that plaintiff could work with no overhead work and no lifting greater than 20 pounds, a lesser level of restrictions than the ALJ subsequently found. There was substantial medical evidence to support the RFC finding.

Plaintiff appears to argue, however, that the treating physician's subsequent opinions that plaintiff was disabled "from gainful employment" (as opposed to statements regarding plaintiff's physical ability to work) should have been conclusive and binding on the ALJ. Plaintiff's contention, however, is not supported by existing case law. Specifically, such opinions are not to be given "special significance" since they are not medical opinions. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Further, it was only after being repeatedly advised of plaintiff's reported difficulties with the TRC in relation to plaintiff's self-imposed 10-pound lifting limit, that plaintiff's treating physician incorporated disability from gainful employment statements into his "plan." In fact, the first disabled finding by Dr. Veggeberg was based on the TRC counselor's assessment. (Tr. 236).

Quoting the ALJ's finding that he found "no basis to conclude that [plaintiff] is not able to walk or stand up to six hours in an eight-hour workday," plaintiff appears to argue the ALJ applied the wrong standard in determining plaintiff's RFC for substantial gainful activity as he was required to find plaintiff could work a "full day minus a reasonable time for lunch and breaks." The quoted statement, however, was made in relation to his description of sedentary jobs and light jobs and plaintiff's ability to perform work of this nature. Specifically, the ALJ stated:

> Ms. Wallace self-imposed a ten pound lifting limitation and I accept this as

---

[6] Even in his reports from November 2001 to July 2002, plaintiff's physician reported plaintiff's prognosis was fair, had good strength and range of motion, had good results with a chiropractor, and was moving reasonably well, and was directed to continue work on her exercises. (Tr. 234-36).

reasonable. However, "sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met, such as an ability to sit for six hours. Ms. Wallace retains the ability to perform work of this nature. Her residual functional capacity also encompasses an ability to perform occupations within the "light" exertional level as well. I find *no basis to conclude that she is not able to walk or stand up to six hours in an eight-hour workday*. Accordingly, I find that Ms. Wallace retains a residual functional capacity for the performance of a limited range of "light" work, given her restrictions on lifting over ten pounds, and the performance of overhead reaching, and a limited range of "sedentary" work given her overhead reaching limitations.

There was no reversible legal error in these statements and/or findings by the ALJ.

B.
Defective Hypothetical

Plaintiff argues the ALJ's finding that plaintiff is not disabled is not supported by substantial evidence because the ALJ presented the VE with a defective hypothetical that did not include all of plaintiff's established impairments, *viz*., (1) plaintiff's need to stretch her legs on the couch; (2) numbness of grip; and (3) extreme drowsiness induced by her pain medication. Plaintiff argues the omission of these physical limitations from the ALJ's hypothetical questions to the VE constituted clear error requiring a remand of this case.

These additional "limitations" referenced by plaintiff, however, were adduced through her testimony and were not included in the written medical evidence of record. The medical records did not contain any report that medications were making plaintiff sleepy (although the records did contain an entry that a previous medication had been discontinued after causing stomach problems). Moreover, plaintiff testified she spent a majority of her time driving others to and from their activities, testimony which is inconsistent with plaintiff's allegation of extreme drowsiness. Further, plaintiff's treating physician consistently found no major neurological problems when

evaluating plaintiff's upper extremities, findings which are inconsistent with plaintiff's allegation of numbness of grip. The ALJ discounted plaintiff's subjective complaints, finding they were not entirely credible. The ALJ was the appropriate authority to weigh the evidence of record and to determine the credibility of the witnesses, and this Court cannot substitute its judgment for the ALJ's, nor can this Court conduct a *de novo* review. The ALJ found plaintiff's only limitations were the inability to lift over ten pounds or to work overhead. The hypothetical was not defective for failing to include additional alleged limitations because the ALJ did not find these limitations to be present.

## C.
### Evaluation of Pain

Plaintiff argues the ALJ's finding that plaintiff is not disabled is not supported by substantial evidence because the ALJ did not properly evaluate plaintiff's subjective complaints of pain. Plaintiff argues she has "proven abundantly" a clinically proven impairment, to wit: two herniated cervical discs, which could reasonably be expected to produce the pain or other symptoms alleged. Plaintiff alleges "[t]hese impairments have resulted in her suffering unendurable pain upon any extended physical activity." Plaintiff maintains the ALJ "totally failed to consider [her] clear showing of a disabling degree of pain" and "accorded it no significance in his evaluation of her R.F.C., nor in his questioning of the vocational expert," which was clear error. Plaintiff argues the ALJ "totally failed to cite any medical evidence that suggests that the [] pain is anything but quite severe." Plaintiff also cites her attending physician's statement that she is "totally and permanently disabled from gainful employment" as proof that her pain level is disabling.

In the Fifth Circuit, pain, in and of itself, can be a disabling condition under the Act. *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985). However, while pain can be a disabling condition, all pain is not disabling. *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir. 1985). Only when pain is constant, unremitting, and wholly unresponsive to therapeutic treatment will it be considered disabling. *Haywood v. Sullivan*, 888 F.2d 1463, 1470 (5th Cir. 1989); *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988). The fact that a plaintiff cannot work without some pain or discomfort will not render him or her disabled. *Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir. 1984).

As with any social security case, the statutorily mandated function of the ALJ includes weighing the evidence and assessing the credibility of the witnesses. *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) ("The Secretary, not the courts, has the duty to weigh evidence, resolve material conflicts in the evidence, and decide the case.") Whether a plaintiff's pain and other subjective symptoms are disabling is a conflict for the ALJ to resolve, *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1990), and the ALJ's decision on severity is entitled to considerable deference. *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986). In determining the severity of the pain a plaintiff suffers, the plaintiff's allegations of pain must be evaluated against the other evidence in the record. *Laffoon v. Califano*, 558 F.2d at 255. An absence of objective factors indicating the existence of severe pain – such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition – can itself justify the ALJ's conclusion. *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988).

Plaintiff appears to challenge the ALJ's refusal to accept plaintiff's allegations of the disabling nature of her pain. The ALJ's conclusion that plaintiff's subjective complaints were not entirely credible is not devoid of support in the record and there is sufficient evidence to meet the

"substantial evidence" standard required to support such conclusions. As noted above, there was no medical evidence of any doctors having placed any restrictions on plaintiff other than a 20-pound lifting limit and no overhead lifting. In fact, the ALJ observed that plaintiff's "progress notes [did] not characterize her as having the profound limitations she asserted at the hearing." The ALJ appropriately considered the lack of objective evidence in evaluating plaintiff's allegation of disabling pain and determining they were not totally credible.

Plaintiff also appears to argue the ALJ's finding of plaintiff's non-credibility is not substantial evidence of plaintiff's RFC. The ALJ did not, however, base his RFC finding on his determination that plaintiff subjective complaints, and the extent to which plaintiff alleged she was restricted by her medical problems, were less than credible. The lack of restrictions placed upon plaintiff by her treating physician, as well as plaintiff's medical records and the RFC assessments included in the records, clearly support the ALJ's determination of plaintiff's RFC. Plaintiff's third ground should be DENIED.

V.
RECOMMENDATION

Although the Court is sympathetic to plaintiff's claims, the evidence of record supports the administrative finding of not disabled. THEREFORE, it is the recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner be AFFIRMED.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this <u>24th</u> day of August 2007.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

\* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).